# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RASHAD B. SWANIGAN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| ROBERT TROTTER, THOMAS | ) Case No. 07 C 4749 |
| MUEHLFELDER, MICHAEL F. LYNCH, | ) |
| KEVIN T. MULLANE, JOSEPH J. POREBSKI, | ) Judge Virginia M. Kendall |
| JAMES POREMBA, ANTHONY R. REYES, | ) |
| WILLIAM N. WOITOWYCH, | ) Magistrate Judge Schenkier |
| MAX J. GUAJARDO, STEVEN KAVANAGH, | ) |
| PETER W. ORSA, MATTHEW B. ROGUS, | ) JURY TRIAL DEMANDED |
| STEVEN F. SWITALLA, KEITH W. | ) |
| UGINCHUS, WILLIAM KAUPERT, LUIS | ) |
| MONTALVO, MICHAEL FRAZIER, | ) |
| THOMAS BEAZLEY, JANICE DILLON, | ) |
| KEVIN ANDERSON, UNKNOWN NUMBER | ) |
| OF UNNAMED OFFICERS OF THE | ) |
| CHICAGO POLICE DEPARTMENT, and | ) |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) |

## THIRD AMENDED CIVIL RIGHTS COMPLAINT

Plaintiff, RASHAD B. SWANIGAN, by and through his attorneys, Irene K. Dymkar and James L. Bowers, and complaining against defendants, states as follows:

## NATURE OF CLAIM

1.  This action arises under the United States Constitution and the laws of the United States, specifically the Civil Rights Act of 1871 (42 U.S.C. §1983), to redress deprivations of the civil rights of plaintiff through acts and/or omissions of defendants committed under color of law. Specifically here, defendants deprived plaintiff of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

2. Additionally, plaintiff rely upon the Court's supplemental jurisdiction to assert the Illinois state claims of intentional infliction of emotional distress, malicious prosecution, and conversion.

## JURISDICTION AND VENUE

3. Jurisdiction is based upon 28 U.S.C. §§1343, 1331, and 1367.

4. Venue lies in the United States District Court, Northern District of Illinois, pursuant to 28 U.S.C. §1391, because all events or omissions giving rise to this claim occurred in this district.

## PARTIES

5. At all times herein mentioned, plaintiff was and is a citizen of the United States and resides within the jurisdiction of the court.

6. At all times herein mentioned, defendants ROBERT TROTTER, THOMAS MUEHLFELDER, MICHAEL F. LYNCH, KEVIN T. MULLANE, JOSEPH J. POREBSKI, JAMES POREMBA, ANTHONY R. REYES, WILLIAM N. WOITOWYCH, MAX J. GUAJARDO, STEVEN KAVANAGH, PETER W. ORSA, MATTHEW B. ROGUS, STEVEN F. SWITALLA, KEITH W. UGINCHUS, WILLIAM KAUPERT, LUIS MONTALVO, MICHAEL FRAZIER, THOMAS BEAZLEY, JANICE DILLON, KEVIN ANDERSON, and UNKNOWN NUMBER OF UNNAMED OFFICERS OF THE CHICAGO POLICE DEPARTMENT were officers employed by the Chicago Police Department and were acting under color of state law and as the employees or agents of the City of Chicago, Illinois. They are being sued in their individual capacity. Plaintiff will seek leave to amend their complaint upon learning the identity of the unknown defendants, so as to properly allege their names.

7. Defendant CITY OF CHICAGO is a municipal corporation, duly organized under the laws of the State of Illinois. Defendant CITY OF CHICAGO maintained, managed, and/or operated the Chicago Police Department.

## STATEMENT OF FACTS

8. On August 22, 2006, at approximately 3:30 PM, plaintiff, RASHAD B. SWANIGAN, left the Labe Bank at N. Elston Avenue and N. Pulaski Road in Chicago, Illinois, after lawfully conducting his banking business, and proceeded to his vehicle in the bank parking lot.

9. Plaintiff was attempting to enter his vehicle, when two police officers, defendants ROBERT TROTTER and THOMAS MUEHLFELDER, approached him and, without reasonable suspicion, stopped him.

10. Said defendants asked plaintiff if he was trying to rob the bank. They told him he looked like a robber.

11. Said defendants placed plaintiff in handcuffs, tightened them unnecessarily in a manner to and for the purpose of causing pain, and then proceeded to searched plaintiff.

12. Said defendants asked plaintiff if they could search his vehicle and he said no. Despite his response, the defendants searched the interior of plaintiff's vehicle.

13. A third officer, believed to be defendant LUIS MONTALVO, and a supervising officer, defendant WILLIAM KAUPERT, arrived at the scene. All officers debated whether they "had enough to arrest" plaintiff and decided that they did.

14. At approximately 4:15 PM on August 22, 2006, plaintiff was placed under arrest, without a warrant, and taken into custody. The case report related to said arrest and said arrest were approved by defendant Sgt. THOMAS BEAZLEY.

15. Plaintiff's vehicle was impounded and towed. Plaintiff was not given a reason for the impoundment and tow. There was no legal cause for the impoundment and tow.

16. After his arrest, plaintiff was transported to the 17th District police station, where he was confined to a small room and shackled to the wall for an extended period of time.

17. At approximately 7:15 PM on August 22, 2006, plaintiff was transferred to the lockup in the 17th District police station, wherein he was searched and fingerprinted.

18. Although plaintiff was not informed of the reason for the arrest, the arrest report states that plaintiff was arrested for a misdemeanor municipal ordinance weapons violation and vehicle registration and insurance violations.

19. Under state law, as well as Chicago Police Department procedures, the offenses cited against plaintiff in the arrest report were all offenses in which the amount of bail is preset by Illinois Supreme Court Rule, in order to avoid undue delay in freeing persons accused of said offenses. Accordingly, no court appearance was necessary to set bail for plaintiff's release from custody.

20. At no time during his custody was plaintiff advised of his right to post bail for the offenses for which he was accused, nor was he ever taken before a judge for a judicial finding of probable cause.

21. Shortly after being taken into custody, at approximately 7:30 PM on August 22, 2006, defendant detectives MICHAEL F. LYNCH and KEVIN T. MULLANE submitted a "Hold" request to defendant Watch Commander JOSEPH J. POREBSKI for the sole purpose of conducting an investigation and gathering evidence against plaintiff for a robbery

offense, an offense for which plaintiff was never charged and for which there never existed probable cause to detain plaintiff.

22. The said "Hold" request was approved by defendant POREBSKI and was in effect for seven separate shifts, including shifts supervised by Watch Commander defendants WILLIAM N. WOITOWYCH, KEVIN ANDERSON and JANICE DILLON, as well as defendant MAX J. GUAJARDO.

23. The effect of the "Hold" request was to delay unreasonably the release of plaintiff on bail and/or a judicial determination of probable cause for continued detention of plaintiff.

24. During a time period in excess of 50 hours, plaintiff RASHAD B. SWANIGAN was subjected to a psychologically and physically abusive set of circumstances designed to coerce a false confession. The abuse included, but was not limited to, the following: plaintiff was repeatedly moved from one police station to another at all hours of the day and night by lockup personnel, including movements by defendants PETER W. ORSA, ANTHONY R. REYES, MATTHEW B. ROGUS, STEVEN F. SWITALLA, KEITH W. UGINCHUS, and STEVEN KAVANAGH; plaintiff was repeatedly interrogated by detective defendants LYNCH and MULLANE; throughout his detention by defendants, plaintiff was denied food and drink, kept in small windowless rooms, not allowed to sleep, and denied access to a bathroom, thus being forced on two occasions to urinate on himself. Plaintiff was disoriented and terrified during this process.

25. Throughout his detention, plaintiff was ridiculed, threatened, and taunted by several police officers and detectives, all of whose names he does not know. Plaintiff was not told why he was being held.

26. During the period of his detention, plaintiff was placed in numerous line-ups conducted by defendants LYNCH, MULLANE, and MICHAEL FRAZIER. Said line-ups were suggestive and conducted in a manner violative of good police practices, with the intent and for the purpose of framing plaintiff for a series of robberies that he did not commit. Plaintiff was further falsely and maliciously informed by defendants that he had been identified by numerous witnesses as the perpetrator of an armed robbery, all for the purpose of coercing a false confession from plaintiff.

27. Throughout his detention, plaintiff repeatedly asked to consult with an attorney, but was denied access to one until he had been held in custody for two days. Plaintiff's father, a retired police officer, tried to find out what was going on, but he was also denied access to his son.

28. Plaintiff was not told he was being charged with any crimes and after more than 50 hours, he was released from police custody, on his own recognizance, without having ever been brought before a judge.

29. As an afterthought, plaintiff was given two traffic tickets alleging false charges. One ticket was for driving with a suspended license, even though plaintiff was outside his vehicle and not driving when he was arrested and his license was not suspended. The other ticket was for driving with no insurance, even though plaintiff was outside his vehicle and not driving when he was arrested and he had insurance for his vehicle.

30. In court on September 25, 2006, the traffic charges were dismissed.

31. Plaintiff also received paperwork indicating that his vehicle had been towed for the false allegations of a violation of a section of the Municipal Code prohibiting the

possession of an "unlawful firearm or laser sight accessory" in a motor vehicle. Plaintiff had no firearm or laser sight accessory in his vehicle.

32. The City of Chicago nonsuited the municipal ordinance violation on September 26, 2006.

33. On October 2, 2006, supervisory defendant JAMES POREMBA approved the closing of the robbery case, for which plaintiff had been investigated while on "Hold" status by defendants LYNCH and MULLANE, based on the fact that plaintiff had been arrested for, though never charged with, said robbery. The fact that said case was "cleared closed by arrest" means that, in the eyes of the Chicago Police Department, plaintiff remains, to this day, the perpetrator of said violent crime. The closing of said case further means that the real offender is no longer being actively sought by the Chicago Police Department.

34. By reason of the above-described acts and omissions of the defendant police officers, plaintiff sustained injuries, humiliation, and indignities, and suffered and continues to suffer great mental and emotional pain and suffering, all to his damage.

35. The aforementioned acts of the defendant police officers were willful, wanton, malicious, oppressive, and done with reckless indifference to and/or callous disregard for plaintiff's rights and justify the awarding of exemplary and punitive damages.

36. By reason of the above-described acts and omissions of the individual defendants, plaintiff was required to retain an attorney to institute, prosecute and render legal assistance to him in the within action, so that he might vindicate the loss and impairment of his rights. By reason thereof, plaintiff requests payment by defendants of a reasonable sum

for attorneys' fees pursuant to 42 U.S.C. §1988, the Equal Access to Justice Act, or any other provision set by law.

## COUNT I
**Plaintiff, RASHAD B. SWANIGAN, Against Individual Defendants for False Arrest**

37. Plaintiff, RASHAD B. SWANIGAN, incorporates and realleges paragraphs 1 – 36, as though set forth herein in their entirety.

38. The stop, seizure, and arrest of plaintiff RASHAD B. SWANIGAN were without probable cause and unreasonable.

39. By reason of the conduct of the individual defendants, plaintiff, RASHAD B. SWANIGAN, was deprived of rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, the individual defendants, and each of them, is liable to plaintiff pursuant to 42 U.S.C. §1983.

## COUNT II
**Plaintiff, RASHAD B. SWANIGAN, Against Individual Defendants for Unlawful Detention**

40. Plaintiff, RASHAD B. SWANIGAN, incorporates and realleges paragraphs 1 – 36, as though set forth herein in their entirety.

41. As more fully set forth above, plaintiff was detained and taken into custody without probable cause to arrest plaintiff for any crime whatsoever.

42. Once plaintiff was arrested, his release from detention was delayed unreasonably by application of the unconstitutional "Hold" procedure, used solely to investigate and gather evidence against plaintiff for crimes for which he was never charged and for which there was never probable cause to arrest him in the first place.

43. Plaintiff was in police custody in excess of 50 hours without ever having been brought before a judge. This delay in and of itself constitutes a violation of plaintiff's core Fourth Amendment right to be free from unreasonable seizures.

44. By reason of the conduct of the individual defendants, plaintiff, RASHAD B. SWANIGAN, was deprived of rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, the individual defendants and each of them is liable to plaintiff pursuant to 42 U.S.C. §1983.

**COUNT III**
**Plaintiff, RASHAD B. SWANIGAN, Against Individual Defendants for Unconstitutional Search and Seizure of His Vehicle and Its Contents**

45. Plaintiff, RASHAD B. SWANIGAN, incorporates and realleges paragraphs 1 – 36, as though set forth herein in their entirety.

46. The search and seizure by the individual defendants of plaintiff's vehicle and its contents were performed without a warrant, without legal cause, and without plaintiff's consent, thus invading and violating plaintiff's right to security and privacy.

47. By reason of the conduct of the individual defendants, plaintiff, RASHAD B. SWANIGAN, was deprived of rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, the individual defendants and each of them is liable to plaintiff pursuant to 42 U.S.C. §1983.

## COUNT IV
### Plaintiff, RASHAD B. SWANIGAN, Against All Individual Defendants for
### Due Process Violations

48. Plaintiff, RASHAD B. SWANIGAN, incorporates and realleges paragraphs 1 – 36, as though set forth herein in their entirety.

49. The individual defendants individually and in a conspiracy with one another subjected plaintiff to conditions of confinement that were unlawful and unreasonable, and which shock the conscience. Among other abuses, plaintiff was repeatedly moved from one police station to another at all hours of the day and night, was repeatedly interrogated, was handcuffed to a wall for long periods of time, was denied food and drink, was kept in small windowless rooms, was not allowed to sleep, and was denied access to a bathroom, thus being forced on two occasions to urinate on himself. Plaintiff was disoriented and terrified during this process.

50. Plaintiff was ridiculed, threatened, and taunted by several police officers and detectives, whose names he does not know. He was not told why he was being held.

51. During the period of his detention, plaintiff was placed in numerous line-ups. Said line-ups were suggestive and conducted in a manner violative of good police practices with the intent and for the purpose of framing plaintiff for a series of robberies that he did not commit. Plaintiff was further falsely and maliciously informed by defendants that he had been identified by numerous witnesses as the perpetrator of an armed robbery, all for the purpose of coercing a false confession from plaintiff.

52. Defendants' purpose in confining plaintiff as they did and keeping him incommunicado for such a lengthy period of time was malicious and done as an attempt to extract false statements from him so that he would falsely implicate himself in crimes he did not

commit and also done to have him falsely identified as the perpetrator of a crime he did not commit.

53. By reason of the conduct of the individual defendants, plaintiff, RASHAD B. SWANIGAN, was deprived of rights, privileges and immunities secured to him by the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, the individual defendants and each of them is liable to plaintiff pursuant to 42 U.S.C. §1983.

### COUNT V
**Plaintiff, RASHAD B. SWANIGAN, Against All Defendants for a Denial of Access to an Attorney**

54. Plaintiff, RASHAD B. SWANIGAN, incorporates and realleges paragraphs 1 – 36, as though set forth herein in their entirety.

55. Plaintiff, RASHAD B. SWANIGAN, was subjected to a psychologically and physically abusive set of circumstances in his confinement as described herein. During his protracted confinement in police custody, plaintiff repeatedly asked to consult with an attorney, but was denied one until he had been held almost two days.

56. Had plaintiff had access to an attorney, the attorney would have been able to request a cessation of the interrogation and abusive treatment of plaintiff.

57. By reason of the conduct of the individual defendants, plaintiff, RASHAD B. SWANIGAN, was deprived of rights, privileges and immunities secured to him by the Sixth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, the individual defendants and each of them is liable to plaintiff pursuant to 42 U.S.C. §1983.

## COUNT VI
**Plaintiff, RASHAD B. SWANIGAN, Against All Defendants for the State Supplemental Claim of Intentional Infliction of Emotional Distress**

58. Plaintiff, RASHAD B. SWANIGAN, incorporates and realleges paragraphs 1 – 36, as though set forth herein in their entirety.

59. The conduct of the individual defendants as described herein was extreme and outrageous.

60. The individual defendants intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so.

61. Defendants' conduct did, in fact, cause plaintiff severe emotional distress.

62. The individual defendants are therefore liable to plaintiff under Illinois law for the state supplemental claim of intentional infliction of emotional distress.

63. Defendant City of Chicago is liable for the acts of the individual defendants pursuant to the doctrine of *respondeat superior.*

## COUNT VII
**Plaintiff, RASHAD B. SWANIGAN, Against All Defendants for the State Supplemental Claim of Malicious Prosecution Regarding Traffic Tickets**

64. Plaintiff, RASHAD B. SWANIGAN, incorporates and realleges paragraphs 1 – 36, as though set forth herein in their entirety.

65. The individual defendants maliciously caused false serious traffic charges to be filed and prosecuted against plaintiff, RASHAD B. SWANIGAN. There was no probable cause for the institution of these charges against him. The criminal proceedings were commenced and continued maliciously.

66. The individual defendants facilitated this malicious prosecution by, along with other conduct, falsifying evidence, creating false police reports, and falsifying written charges.

67. Plaintiff was wrongfully incarcerated as a direct result of the prosecution of these charges.

68. Plaintiff was injured emotionally and otherwise from the loss of certain liberty and related rights.

69. The criminal proceedings were terminated in plaintiff's favor on or about September 25, 2006.

70. The individual defendants are therefore liable to plaintiff under Illinois law for the state supplemental claim of malicious prosecution.

71. Defendant City of Chicago is liable for the acts of the individual defendants pursuant to the doctrine of *respondeat superior.*

### COUNT VIII
**Plaintiff, RASHAD B. SWANIGAN, Against All Defendants for the State Supplemental Claim of Malicious Prosecution Regarding Ordinance Violation and Administrative Proceeding**

72. Plaintiff, RASHAD B. SWANIGAN, incorporates and realleges paragraphs 1 – 36, as though set forth herein in their entirety.

73. The individual defendants maliciously caused false allegations of a violation of a section of the Municipal Code prohibiting the possession of an "unlawful firearm or laser sight accessory" in a motor vehicle to be brought and serve as a basis for the impoundment and towing of plaintiff's vehicle.

74. Plaintiff had no firearm or laser sight accessory in his vehicle and there was no probable cause for the institution of this charge and this administrative proceeding against him. The administrative proceedings were commenced and continued maliciously.

75. The individual defendants facilitated this malicious prosecution by, along with other conduct, falsifying evidence, creating false police reports, and falsifying written charges.

76. The ordinance violation and vehicle impoundment proceedings were terminated in plaintiff's favor on September 26, 2006.

77. The individual defendants are therefore liable to plaintiff under Illinois law for the state supplemental claim of malicious prosecution.

78. Defendant City of Chicago is liable for the acts of the individual defendants pursuant to the doctrine of *respondeat superior.*

**COUNT IX**
**Plaintiff, RASHAD B. SWANIGAN, Against All Defendants for the State Supplemental Claim of Conversion**

79. Plaintiff, RASHAD B. SWANIGAN, incorporates and realleges paragraphs 1 – 36, as though set forth herein in their entirety.

80. Defendants' assumption of control over plaintiff's vehicle and its contents was unauthorized and wrongful.

81. Plaintiff had the right to control and possess his vehicle and its contents.

82. By withholding plaintiff's vehicle and its contents, defendants deprived plaintiff of his personal property without his consent.

83. The individual defendants are therefore liable to plaintiff under Illinois law for the state supplemental claim of conversion.

84. Defendant City of Chicago is liable for the acts of the individual defendants pursuant to the doctrine of *respondeat superior*.

WHEREFORE, plaintiff, RASHAD B. SWANIGAN, by and through his attorneys Irene K. Dymkar and James L. Bowers, requests judgment as follows against the defendants on each and every claim:

> A. That defendants be required to pay plaintiff general damages, including pain and suffering and emotional distress, in a sum to be ascertained at a trial of this matter,
>
> B. That defendants be required to pay plaintiff special damages,
>
> C. That defendants, except CITY OF CHICAGO, be required to pay the plaintiff attorneys' fees pursuant to 42 U.S.C. §1988, the Equal Access to Justice Act, or any other applicable provision,
>
> D. That defendants, except CITY OF CHICAGO, be required to pay plaintiff exemplary and punitive damages in a sum to be ascertained at a trial of this matter,
>
> E. That defendants be required to pay plaintiff costs of the suit herein incurred, and
>
> F. That plaintiff be granted such other and further relief as this Court may deem just and proper

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY.**

Dated: August 11, 2008                     /s Irene K. Dymkar
                                                              Irene K. Dymkar

Plaintiff's Attorneys:
Irene K. Dymkar                            James L. Bowers
300 West Adams, Suite 330                  631 North Central Avenue
Chicago, IL 60606-5107                     Chicago, IL 60644
(312) 345-0123                             (773) 379-9262

# CERTIFICATE OF SERVICE

       I, Irene K. Dymkar, an attorney, certify that on the 11th day of August, 2008, a copy of PLAINTIFF'S THIRD AMENDED COMPLAINT was served upon the attorneys named below through the Court's electronic filing system.

| | |
|---|---|
| Liza M. Franklin | Ashley C. Kosztya |
| City of Chicago, Department of Law | City of Chicago, Department of Law |
| 30 N. LaSalle, Suite 1400 | 30 N. LaSalle, Suite 1020 |
| Chicago, IL 60602 | Chicago, IL 60602 |

Dated: August 11, 2008                                   /s Irene K. Dymkar
                                                                     Irene K. Dymkar