IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| RASHAD SWANIGAN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 07 C 4749 |
| ROBERT TROTTER, et al., | ) ) ) | Judge Virginia M. Kendall |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rashad Swanigan ("Plaintiff") sued various members of the Chicago Police Department (collectively, "Defendants") for various claims pursuant to 42 U.S.C. § 1983 and Illinois state law. Plaintiff asserted nine claims in his amended complaint: federal claims asserting false arrest (Count I), unlawful detention (Count II), unlawful search and seizure (Count III), violation of due process (Count IV), and denial of access to counsel (Count V); and, four claims under Illinois law: intentional infliction of emotional distress (Count VI), malicious prosecution (Count VII-VIII), and conversion (Count IV).

On August 4, 2009, this Court granted summary judgment on liability in favor of Plaintiff against Defendants Michael F. Lynch, Kevin T. Mullane, Max J. Guarjardo and Joseph J. Porebski on the unlawful detention claim but denied Plaintiff summary judgment as to Defendant Frazier. This Court also granted summary judgment to the Defendants on all state law claims (Counts VI-IX) and on federal claims for search and seizure, violation of due process, and denial of access to counsel (Counts III-IV) and on the federal claim for false arrest (Count I). This Court amended the summary

judgment ruling to allow the false arrest claim to proceed to trial only against Defendants Trotter, Muehlfelder, Montalvo and Kaupert.

On August 29, 2011, a jury trial began against Defendants Robert Trotter, Thomas Muehlfelder, and William Kaupert on the false arrest claim (the claim against Defendant Montalvo having been dismissed at the start of trial) and against Defendants William Woitowych, Janice Dillon, Kevin Anderson (none of whom moved for summary judgment) and Defendant Frazier on the unlawful detention claim. On August 30, 2011, the jury found against Plaintiff and in favor of Defendants Trotter, Muehlfelder and Kaupert on the false arrest claim. The jury found in favor of Plaintiff on the unlawful detention claim as to Defendants Woitowych, Dillon and Andersen, but not as to Defendant Frazier. Against the seven defendants found liable for unlawful detention, the jury awarded Plaintiff $60,000 in compensatory damages. The jury did not award any punitive damages.

Presently pending before the Court is Plaintiff's petition for attorneys' fees. Plaintiff seeks $841,765.68 in fees. This Court referred the present motion to Magistrate Judge Sidney I. Schenkier who issued a Report & Recommendation ("R&R"). Judge Schenkier recommended that the Plaintiff be awarded $332,755.15 in attorneys' fees, awarded prejudgment interest on the attorneys' fee award, with interest beginning on October 30, 2011, and denied an interim fee award. Plaintiff objects to the Report and Recommendation on four main grounds.

It bears noting before commencing analysis of the objections before this Court that the Court has already approved a Report and Recommendation of the same magistrate judge, Judge Schenkier, concerning the same Plaintiff's counsel and the same type of case (§1983 allegations against the City of Chicago), tried before this Court a few weeks before the trial of this case. Judge Schenkier wrote an incredibly thorough Report and Recommendation in the *Ragland* case ("*Ragland* R&R") that this

Court adopted in its entirety by separate opinion. *See Ragland v. Ortiz*, 08-615 (R&R at Docket No. 187, Opinion adopting R&R at Docket No. 213)   As the issues in this matter are nearly identical - indeed, the objections filed by Plaintiff's counsel are largely a verbatim copy of the objections filed in the *Ragland* case - this Court assumes familiarity with both Judge Schenkier's R&R in this case and the *Ragland* R&R, as well as with this Court's opinion adopting the *Ragland* recommendation.

## ANALYSIS

Where a plaintiff prevails on a claim brought under 42 U.S.C. § 1983, that plaintiff is entitled to recover reasonable attorney's fees pursuant to 42 U.S.C. § 1988. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 632-3 (7th Cir. 2011).   Plaintiff succeeded on one of his two Section 1983 claims.   On his successful claim, Plaintiff succeeded against three of four defendants and received a compensatory damage award of $60,000.00.   The jury declined to award punitive damages. Defendants do not dispute that Plaintiff prevailed or that Plaintiff is entitled to recover reasonable attorney's fees. The dispute lies in the determination of what constitutes that reasonable amount.

When calculating a reasonable attorney's fee award for a Section 1988 fee petition, the starting point is the "lodestar analysis." *Pickett*, 664 F.3d at 639. This lodestar analysis requires a court to multiply the number of hours reasonably expended by plaintiff's attorneys by their reasonable hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1999).   In determining the appropriateness of this lodestar amount, the court may consider many factors, including the results obtained, the complexity of the legal issues and the experience and success of the attorneys. *See Hensley*, 461 U.S. at 433 (1983); *Jaffe v. Richmond*, 142 F.3d 409, 412-3.   The party requesting the fee has the burden of proving its reasonableness, including the hourly rate and appropriate hours expended. *See*

3

*Hensley*, 461 U.S. at 437. Once the lodestar calculation has been made, the party seeking a reduction in the lodestar bears the burden of demonstrating that the reduction is warranted. *See Robinson v. City of Chicago*, 489 F.3d 864 (7th Cir. 2007).

## I.   The Rate Determination

A reasonable hourly rate, as defined by the Seventh Circuit, is one that is "derived from the market rate for services rendered." *Pickett*, 664 F.3d at 640 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). Where an attorney "maintains a contingent fee or public interest practice," and therefore does not have an established billing rate, plaintiff must provide contextual evidence for their requested rate in the form of the rates charged by lawyers in the community of "reasonably comparable skill, experience and reputation." *People Who Care*, 90 F.3d at 1310.

In *Ragland v. Ortiz*, Judge Schenkier recommended that the hourly rates for Mr. Dymkar, Mr. Bowers, and Ms. Hill be set at $330/hour, $310/hour, and $100/hour respectively. *See Ragland* R&R at 17, 19, 21. Judge Schenkier's analysis in *Ragland* was thorough, detailed and well-reasoned, and reached an appropriate conclusion that this Court adopted in its entirety. In the matter now before the Court, Plaintiff's counsel submitted nearly identical arguments and supporting materials, supporting the same proposed hourly rates, and Judge Schenkier recommended the same reduced hourly rates here as he did in *Ragland*. Plaintiff's counsel has now submitted nearly verbatim objections to Judge Schenkier's opinion in this matter as she did in *Ragland.*

With three opinions on the subject of Plaintiff's counsel's hourly rate now of record, this Court will not rehash the reasoning contained in those opinions a fourth time. For the reasons set forth in Judge Schenkier's opinion in *Ragland*, this Court's opinion in *Ragland*, and Judge

4

Schenkier's opinion in this matter, the Court adopts Judge Schenkier's recommendation that Ms. Dymkar's hourly rate be $330/hour, Mr. Bowers' rate be $310/hour, and Ms. Hill's rate be $100/hr.

## II. The Reduction of 37.2 Hours

Judge Schenkier analyzed over 1,500 hours billed by Plaintiff's counsel and overruled all objections to those hours other than 37.2 hours during which two of Plaintiff's counsel attended the same deposition. Plaintiff's counsel objects to the reduction of the lodestar calculation by those 37.2 hours. Judge Schenkier properly determined that Plaintiff's counsel provided no basis for why one counsel was sufficient to attend five depositions, but two counsel were required for the remainder.

Plaintiff relies on the assertion that because Defendants had more than one lawyer present, Plaintiff should be permitted two attorneys as well. But Judge Schenkier did not base his ruling on an assessment of litigation strategy between the parties and their respective number of attorneys in the room; rather, he made a proper conclusion - based on Plaintiff's own conduct during the course of the case - that if one Plaintiff's attorney sufficed for several depositions in this matter (and most depositions in the *Ragland* case) then Plaintiff should have been able to explain why additional attorneys were necessary at certain depositions. Were it Defendants' motion for attorney's fees, Judge Schenkier's reasoning would apply with equal force and Defendants would need to show why they had more attorneys present. But it is not Defendants whose attorney hours are at issue here. Judge Schenkier's reasoning was generally proper and specifically tailored to address a limited number of hours relative to the entire case. The Court adopts Judge Schenkier's recommendation and reduces Plaintiff's counsel's hours by 37.2 to account for duplicative attendance at depositions.

5

### III. The 35% Reduction in the Lodestar Calculation

Third, Plaintiff objects to the 35% total reduction from the lodestar calculation recommended by Judge Schenkier. Plaintiff objects to each of the six separate grounds upon which Judge Schenkier based his recommendation.[1]

The lodestar calculation must be the initial basis for the calculation of a reasonable attorney's fee. *Johnson v. GDF, Inc.* 668 F.3d 927, 929 (7th Cir. 2012). Once calculated, in limited circumstances that lodestar amount may be adjusted based on a number of factors. *Id.* (citing cases); *Hensley*, 461 U.S. at 430 (listing factors for adjusting the lodestar); *see also Estate of Enoch*, 570 F.3d at 823 (lodestar figure may be adjusted based on a variety of factors). These factors include, among other things, "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs.,* 574 F.3d 852, 856-57 (7th Cir. 1999). Defendants bear the burden of demonstrating that a reduction in the lodestar calculation is warranted. *Robinson v. City of Harvey*, 489 F.3d 864 (7th Cir. 2007).

This Court agrees with Judge Schenkier that a reduction in the lodestar calculation in this matter is appropriate, though less than the 50% reduction urged by the Defendants. In reaching the conclusion that a 35% reduction is warranted, Judge Schenkier properly focused on several factors, including foremost the Plaintiff's degree of success. The degree of success achieved by the plaintiff is one of the factors to be considered. *Hensley*, 461 U.S. at 430. "If. . . a plaintiff has achieved only

---

[1] Contrary to Plaintiff's assertions in his reply, Defendants did not fail to respond to Plaintiff's objections and their response brief does not constitute any sort of waiver, acceptance of, or agreement with Plaintiff's objections. Defendants' response urges this Court to adopt Judge Schenkier's R&R in its entirety and, rather than attempt to rehash the reasoning provided by Judge Schenkier, defers to the text of the R&R. Given the thoroughness of Judge Schenkier's opinion, Defendants' election to stand by the opinion is an acceptable form of response.

partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436.

Plaintiff prevailed on one claim against seven officers and received a judgment of $60,000, a respectable sum that certainly constitutes "prevailing" for purposes of section 1988. However, Plaintiff started this case with nine causes of action against each of 21 defendants. At summary judgment, seven of the causes of action were dismissed from the action as were nine of the defendants. At trial, one of the two remaining claims was dismissed against three of the remaining defendants, and Plaintiff did not prevail at trial on one of those two remaining claims. Therefore, from start to finish, Plaintiff moved from a complaint alleging 9 claims against each of 21 defendants to victory on 1 claim against 7 defendants following trial.

Plaintiff's argument that all of the originally filed claims were "part of and inseparable from plaintiff's core claims" (Pl. Obj. [Docket No. 353] at 19) does not change the fact that Plaintiff succeeded on a relatively small fraction of the claims brought. As noted by Judge Schenkier, the claims upon which Plaintiff lost at summary judgment included all the state law claims, including the claims for malicious prosecution - claims that would have brought additional damage allegations had they gone to trial. Additionally, those malicious prosecution claims merited, at least in part, different discovery than that needed for the unlawful detention claim that ultimately succeeded at trial. Reducing the lodestar calculation to account for the fact that discovery in this case necessarily included substantial discovery on claims that did not prevail in addition to claims that did prevail does not constitute a "meat-axe approach" to reducing the lodestar fee as Plaintiff claims. Rather, the general reduction acknowledges that Plaintiff did extensive discovery on a whole host of claims, less than a third of which went to trial and even fewer of which ultimately prevailed, and that many

7

of those claims involved different time periods and different actors than those involved in the single claim upon which Plaintiff ultimately succeeded.

As Judge Schenkier noted, this Court's concerns over the breadth of the discovery conducted in this case cannot come as a surprise to Plaintiff. In this Court's opinion granting in part and denying in part the parties' motions for summary judgment in 2009, this Court specifically noted that plaintiff had missed opportunities to narrow his claims based on the information provided in discovery, including information obtained in discovery that made clear certain officer defendants were not present at Plaintiff's arrest. Instead, Plaintiff elected to continue to pursue each officer on each count notwithstanding the information uncovered that made clear Plaintiff could not proceed past summary judgment on many claims. Plaintiff urges this Court to stand on the principle that all hours expended were reasonable merely because they were related to the litigation; however, it was clear to this Court even at the summary judgment stage that much of the discovery and briefing in this case could have been avoided had Plaintiff made a reasonable consideration of the likelihood of success on the claims originally brought, and narrowed the charges alleged, and the defendants charged, far earlier in the proceedings. Judge Schenkier's recommendation of a 35% reduction in the lodestar calculation is reasonable and appropriate, as his well-reasoned and thorough opinion details.

## IV. Pre-Judgment Interest

Neither party objected to Judge Schenkier's recommendation that pre-judgement interest be awarded, but Plaintiff noted in his objections that Judge Schenkier did not specify the rate to be applied to that interest. The parties agree that the award of pre-judgment interest should be set at the government prime rate of 3.25%. This Court agrees that pre-judgment interest is appropriately

calculated at the prime rate for the appropriate period. *See First Nat'l Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 480 (7th Cir. 1999). The prime rate from December 2008 until the present has been 3.25% *See www.federalreserve.gov/releases/h15*. Therefore, pre-judgment interest is awarded from October 30, 2011 until time of payment at the rate of 3.25%.

## CONCLUSION

This Court has reviewed the objections to Judge Schenkier's Report and Recommendation and finds that the objections are without merit. This Court adopts Judge Schenkier's opinion in its entirety, and adds that pre-judgment interest shall be at the prime rate of 3.25%.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 14, 2012